The first case is People of the State of Illinois v. Starr, and Mr. Wells, when you're ready, please begin your argument. May it please the Court? Counsel. My name is Larry Araldo. I represent the defendant Karrae Starr v. Starr. Ms. Starr was convicted of first-degree murder. She raised several issues before this Court. I would stand on her brief concerning any point that's not raised here today. The first point that I want to raise is that the jury here was distracted, confused, and misled by the prosecutor in this case. This confusion and distraction was manufactured by Charles Verneye and exploited by him. The clearest evidence of this comes from the questions that the jury asked during deliberations. They asked five questions. They asked what the implication was of adding guilty but mentally ill to a manslaughter verdict. The jury asked, if we add mentally ill, guilty but mentally ill, to our verdict, are we saying that this proves mental illness? The jury also asked, and this is a very important one, quote, are we saying that the illness provides an excuse for the criminal conduct? Close quote. The jury asked whether, if the guilty verdict was entered without a finding of mental illness, would they be saying that the defendant had no mental illness? And then finally, the deliberating jury requested whether they wanted to know whether the guilty but mentally ill option, which was presented here, was something that was manufactured specifically for Ms. Starr's case, or whether such matters were, quote, actually included in the Illinois statutes. Close quote. Well, these are very interesting questions because, under the law, guilty but mentally ill option is not available unless the defendant presents an insanity defense. And there was no insanity defense presented here. This was crafted specially for this case. You might wonder how it got into the case. The prosecutor presented six instructions on guilty but mentally ill and took out any reference to insanity. So they were either non-IPI or modified IPI instructions taking out insanity. So the context for applying guilty but mentally ill under the law, under the statutes, was removed by the prosecutor. Now, why would the prosecutor do that? The prosecutor did that so he could make this argument right here. He said, ladies and gentlemen, mental illness can be used by some people as an excuse for their behavior. And I think that's one of the things that's wrong with this country. We have, I think, an epidemic of what I would call abuse, excuse abuse. And that is, any time something goes wrong in a person's life, they always, there's always some excuse they try and put forth. And people will just not take responsibility for their actions anymore. Let me ask a couple of questions. The defense did initially state they were asserting an insanity defense. I believe instead that what the defense said was that they were going to put on evidence and determine at the close of the evidence whether an insanity defense would apply. It was in the mix, though, an insanity defense, the possibility of asserting an insanity defense. And the defense called one witness, which was a psychiatrist. That's right. And put on evidence about issues having to do with mental illness. Yes, that's right. And at the issues conference, the defense attorney said that there would be no insanity defense raised. And he told the jury that there was no issue of insanity. Okay. So this is not a situation, though, where the prosecutor put these instructions in out of the blue when there was no discussion about mental illness or anything at all? Oh, that's correct. That's correct. The defense had initially discussed the possibility of raising the insanity defense. And then when the evidence was completed, there was insufficient evidence to establish an insanity defense. And the state did not object to the presentation of any of this mentally ill material. And, as I say, these were state's instructions. Couldn't the state have been legitimately concerned at that point about what the jury was going to do with this evidence that came in unless they did? He did instruct on guilty but mentally ill? They could have moved the habit scripting as being irrelevant. Instead, what the prosecutor did was take advantage of it, making this argument that our society was going downhill in general. She was not taking responsibility for her actions and arguing specifically that in this case there was excused abuse, that the witness was – the defendant was trying to find an excuse for her behavior. He said, quote, it is my conviction that, again, mental illness is just an excuse, close quote. And it's important to remember that the state's own instruction said, quote, that a jury was instructed that a person found guilty but mentally ill is, quote, not relieved of criminal responsibility. So the argument that the prosecutor was making was directly contrary to his own instruction. That's why the jury asked the question, are we saying that mental illness provides an excuse for criminal conduct? That's a direct reference to the misstatement of the law by the prosecutor that guilty but mentally ill provides an excuse. Now, besides the prosecutor misstating the law on guilty but mentally ill and distracting the jury from the true issue in the case, the prosecutor also misstated the facts. What the jury should have been focusing on is the cause of death. The cause of death evidence in this case came from the prosecutor's expert witness. And he testified that in as little as 30 seconds, depriving a toddler of oxygen could cause the toddler to be unconscious. And that in as little as 60 seconds, the toddler might not be able to spontaneously resume respiration. Now, that is a shocking thing. I mean, I can hold my breath for 60 seconds. I suppose most people in here, this room can hold their breath for 60 seconds. But this expert witness testified that in as little as 60 seconds, a toddler might not be able to resume breathing. That's what the evidence was. But what the prosecutor argued to the jury was, quote, Mr. Broeking, defense attorney, says that there's no evidence to indicate that she smothered the child for anywhere from four to six minutes. I would submit to you that according to Dr. Didecker, the state's expert, in order to kill the child, she had to keep her hand over the mouth and nose for four to six minutes. That was his testimony, and he did not waver on that. And that's what he said, close quote. Now, that's at 997-998. That is a complete misrepresentation of the cause of death evidence in a murder case. Now, I will point out specifically to this court that on page 33 of its briefing, the state admits that that statement is a misstatement of fact, that the witness did not testify to that. The state goes on, however, to say that this is a minor misstatement and an isolated event. Well, it's not a minor misstatement. It's a misstatement of the cause of death in a murder case, and it wasn't an isolated event either. The prosecutor told the jury in opening statement that his expert would testify that there was at least four minutes of smothering. The prosecutor said in closing argument that the child, quote, might very well be alive today if Ms. Starr had, quote, kept her hand over the mouth and nose for anywhere from four to six minutes, close quote. That's at 998 during closing argument. The prosecutor told the jury that Ms. Starr, quote, looked into the eyes of little Bianca and just kept smothering her and smothering her, went past the second one, probably did it for four to six minutes until she was dead, which brings home what a terrible crime this was, said Art, 1006. The prosecutor said, quote, that Ms. Starr made the choice of keeping her hand over the nose and mouth of little Bianca for anywhere up to four to six minutes, which eventually caused the irreparable brain damage which caused her death. That's at Art, 968. The prosecutor told the jury that her screamer was proved because she, quote, kept her hand over the mouth and nose even after 90 seconds up to four to six minutes until she killed the child. This was not one ambiguous remark. This was a pattern. The prosecutor distracted the jury with the guilty but mentally ill material that didn't belong in the case, used it to castigate the defendant, and said she was trying to evade criminal responsibility when his own instructions told the jury that it had nothing to do with criminal responsibility. And then he misrepresented the evidence for the cause of death over and over again. What the expert testified to was to a sliding scale of risk that no one could be certain of from this toddler or that toddler, whether it was 30 seconds or 60 seconds or 90 seconds, as little as 60 seconds, to cause death. Now, what is a sliding scale of risk like that? That's what recklessness is. What about being consciously aware of that risk? How many people in this room are actually consciously aware that 60 seconds can cause a child's death like that? That's negligence. So the expert is talking about a sliding scale of danger, which fits perfectly into recklessness at most. And the prosecutor misrepresents this to make it four minutes so that a person would be practically certain to cause death, which is known for first-degree murder. There's no way that a jury could perform its constitutionally required function when it's being misled in this way. The prosecutor misled this jury on the law, misled this jury on the facts, and there's no way that Ms. Dar received a fair trial. We'd ask the court to reverse this conviction and remand this case for a new trial. Thank you. May it please the court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Defense counsel today has said that the prosecutor engaged in a concerted effort to mislead the jury by inserting irrelevant information about mental illness into this case. I would say to you that the information on mental illness was not inserted by the prosecutor. It was insisted upon, for good reason, by defense counsel. Initially, I would direct this court to the fact that the defendant did file an affidavit or a pleading prior to the trial, saying that he tried to remember his exact words. Might, may, assert the insanity defense. And then at the next hearing, he said that he had asserted the insanity defense. And he says, and here I'm looking at my notes, so I'm not asserting these to be quotes, that his understanding was that he could not put the issue of mental health before the jury unless he predicated it on the defense of insanity. And here I have a quote, so we did it. So the defense counsel put the issue of insanity into the trial. And he went on to note, I mean, there was a lengthy discussion as to whether they could do this, how much had to be done. And that's what he wanted to do. He wanted to do this for a very good reason, which is that this isn't a case where we're worried about did the defendant kill her daughter. She did. We're not even worried about how did it happen. It happened because the defendant put her hand over the baby's mouth and nose until she died. So that's what happened. The question was, was the behavior reckless? Was it intentional? Was it knowing? That's the question. So you'd agree that the sole issue really for the jury to decide was mental state? Yes.  He discusses at length information not only due to trial but in the PSI, which really is not relevant in the statement of facts of the jury, but still it's there. This young woman did have a horrendous upbringing. There's no doubt about that. And so very reasonable trial strategy in this case. In fact, the only trial strategy in this case is to say she's mentally ill. Her behavior was reckless, not intentional. And that's what he was focusing on. He actually asked the jury to return a verdict of guilty of second degree, if I'm getting my phrasing right there, reckless homicide and involuntary manslaughter. Involuntary. Involuntary manslaughter. Guilty but mentally ill of involuntary manslaughter. That's what he asked the jury for. So this, if I use the language from defendant's brief, if the entire trial was infected by confusing an irrelevant matter, material on mentally ill theory, then defense counsel is the one that infected the trial. And as I say, he did it for a good reason. His only, I think there was some, her sister testified just kind of about the problems she had in the past. But for the most part, the only defense, the only defense witness was Dr. Penao, who said that she was mentally ill. So before trial, he says we're starting with insanity defense. When there's this discussion of, well, here again, I'll quote from the record, are you presenting a defense of insanity or are you going to ask the court for instruction on guilty but mentally ill? Defense counsel says if the evidence is sufficient at that point in time, we'll make that determination. Later on, the trial court says what is your defense? Insanity? And defense counsel says it depends on what the evidence comes out. He says that although Dr., that he notes that Dr. Penao felt that the defendant's mental illness contributed to the crime and would give the basis for a verdict of guilty but mentally ill. This is all before the trial starts. Defense counsel pointed out that the jury could find the defendant insane even if there was no expert who so stated. That's true. He also stated that Dr. Penao's analysis of the defendant's mental illness was very relevant in regards to men's rights. He said he wanted to present evidence of the defendant's mental illness and determine after the evidence was presented whether he would seek an insanity defense or a GVMI instruction. And the trial court said that the defendant had the right to present that evidence. So the state presents no evidence of mental illness. The defendant's sole evidence is mental illness. And now it's time for the jury instruction conference. The state asks for IPI 7.01, which is the definition of first degree murder. Defense counsel objects and says it should be issues instruction that includes 24-25.01I. This is the Illinois Patent and Jury Instructions Criminal established by Illinois Supreme Court Committee. These rules have to be used. They have basically the effect of law. 24-25.01I is captioned issues when the jury is to be instructed on the guilty but mentally ill verdict-jury is not to be instructed on the insanity defense. So you can instruct on guilty but mentally ill and not on insanity. Now, I will admit that as the defendant points in his reply brief that the second point there is that the defendant has not proved by preponderance of the evidence that he was insane at the time he committed the fill-in-the-blank for the crime. That was not included in the instruction. However, by the time the jury instruction came along or this jury instruction conference came along, defense counsel had decided that he was not going to ask the jury on an insanity offense. He conceded that she was insane. He did not decide to try and establish what, as he mentioned earlier, he could have attempted to establish that the defendant was insane even though Dr. Connell said she wasn't. He decided not to do that. His decision, he agreed to all of the guilty but mentally ill instructions. He asked for some of them. And he decided so since he concedes and actually in his closing argument said to the jury she's not insane, the omission of that second prong of proving by the preponderance of the evidence that she's not insane certainly cannot have misled him. It cannot have misled the jury nor can it have prejudiced the defendant. That's the only change from the IPI jury instruction. And as I say, all of these instructions were agreed to, requested by, as I say, defense counsel says that we need to include 24-25.01i. Omitting proving insanity when defense counsel has decided I'm not going to ask for that cannot have caused any problem at all. And in fact, the defendant offered his own manslaughter instruction which stated the elements of involuntary manslaughter and included the additional guilty but mentally ill instructions. This was mental illness was the heart of the defendant's defense. To allow, you want to talk about confusing the jury to have all this evidence of mental illness come in and then not instruct the jury on where does this come in. Okay. Defense counsel. So the issue though is mental state. And evidently defense counsel put in all this mental illness to somehow have the jury consider that in determining what the defendant's mental state was at the time of the commission of the alleged offense. Right? Is that what it looks like to you? Sounds like that's what you're arguing. Can you ask me that question again? Well, you agree you already said that really the only issue, everybody knew what acts she performed. The only issue was mental state. So what I'm leading up to is why was it not error then for the court to refuse the instruction on the definition of knowledge? Because the jury never asked for it. That's the only time it's given? The committee comments following a case that said it was error to not give it when the jury asked for it, then, you know, put that instruction in IPI. But they don't say don't ever give it. No, they do not. But the cases that have interpreted the rule, including People v. Hope, which is an Illinois Supreme Court case that came out right about the time the jury came, and several other cases cited in my brief, all say that if the jury asked, first of all, they say knowledge is a commonly understood term. Second of all, they say if the jury asks for a definition, then they have to give it. I would know that the trial court said exactly that. If they asked for it, absolutely I will give it. It would be reversible error if I did not. So in a case where the only issue for the jury to decide is really what the defendant's mental state was, and where certainly a defendant has a right to have the jury instructed on their theory of defense, it's no error to refuse an instruction on that very issue. Not when the jury shows no. Well, the jury didn't ask for guilty but mentally ill instructions, right? But that's not, that's error. What I heard you say just a few minutes ago is it would have been error not to give it because that's what the whole defense was about. Guilty but mentally ill is a legal term of argument. The term, the word knowledge is not. Decades of Illinois law have established that the word, that knowing and knowledge are commonly understood terms and do not need definition. And it was only when the situation arose where a jury came along and said, we don't understand. Tell us what this word means. What do you mean by this word that the IPI, the Supreme Court Committee said, okay, if they ask, you tell them. It offers no indication. And as I said, all the jury obviously knows how to say that. I think the Supreme Court Committee said since there's been a case in which this court has said it's error to fail to give it when the jury asks for it, now we're giving you this instruction. But then they don't say in the committee comments, you can only give this if the jury asks for it. It says we offer no indication. We offer no, that's exactly right. But as I say, the cases since that time have always said that if the jury asks for it, then there is, then it should be given. But that's the Griffin case is what you're saying. Griffin is where, unlike here in Griffin, the jury asked. Is that correct? Yes. Well, Griffin is a case where the jury asks, yes. But there are, like I said, there are several cases cited in my brief where it is always said that, I mean, a situation just like this where a defendant raises the issue that says it was error to not instruct, and the court says they didn't ask, it wasn't an abuse of discretion. I want to point out one thing, too, because I think we, all through this brief, the defendant talks about not the definition, but the second prong of the definition. And he says that it was error in failing to instruct on practically certain. Practically certain is the second half of the knowing. And the two cases that defendant cites both dealt with courts that, for some reason or another, decided to give the first half of that instruction. First of all, jury asked. And second of all, the judge gave half of the instruction, gave the first half and not the second half. So that's why we believe that since the defendant is the one that had an absolute necessity of dealing with mental illness, that it was correct to instruct the jury and all the other issues will stand on our brief. Thank you. Rebuttal? Thank you, Your Honor. Here's the statement of the law on the question of using guilty but mentally ill. Quote, a defendant cannot be found guilty but mentally ill unless he raises the defense of insanity, period. Quoting the Gozier case in the Illinois Supreme Court, and that is People v. Adomat, 259-3-670-678. That's both in the original brief and in the reply brief. That's what the law is, and it comes from the statutes. There's a statute about the bench trial where it says where the defendant has asserted the defense of insanity, the court may find the defendant guilty but mentally ill at a bench trial. And then it's affirmative defenses. It says a defense based on any of the provisions of Article VI is an affirmative defense except that mental illness is not an affirmative defense but an alternative plea or finding that may be accepted under appropriate evidence when the affirmative defense of insanity is raised or plea of guilty but mentally ill has been made. The defendant did not plea guilty but mentally ill, and he didn't raise the insanity defense. And this jury instruction that was pointed out, 24-25.01i, that was altered to take the insanity defense language out of it so there's no context for the jury to use it. But it was clearly here to give the jury that kind of instruction. I would point out that the state's instructions, 6, 12, 14, 15, 16, and 19, all dealt with this. Those were state's instructions. And even that doesn't explain the argument about excuse abuse. I mean, let's just assume for the sake of argument for some reason that the guilty but mentally ill material had to come in. What gives the prosecutor the right to tell the jury that this is excuse abuse and the defendant's trying to evade responsibility for her actions by presenting guilty but mentally ill when his own instruction says that there's no responsibility evaded by it, that that doesn't alter criminal responsibility? And it distracts the jury enough that they're talking about that the whole time, sending out questions about that, including wondering whether it's an excuse. I think that it's clear that the prosecutor misled this jury by abusing the law on the guilty but mentally ill and harmed the defendant by distracting the jury and kept them from focusing on the real issue of the case, which is the cause of death and mental state. Thank you. Thank you, each of you, for your briefs and arguments in this case. We'll take the matter under advisement.